UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| 5th OF JULY, LLC, and SWEETY HIGH, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 3:19-cv-00994 ) |
| DANIEL ALAN THOMAS, KRISTINA MARIE THOMAS, and TMT, a minor, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Pending before the Court in this diversity action is "Defendants' Motion to Dismiss Plaintiff's Complaint and Compel Arbitration" pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. (Doc. No. 20). The Motion has been fully briefed by the parties (Doc. Nos. 21, 28, 30). For the reasons that follow, this case will be stayed pending arbitration.

**I.**

At the pleadings stage, a motion to compel arbitration is essentially a motion to dismiss under Rule 12(b)(6) – not Rule 12(b)(1) – because the defense is that the opponent has failed to state a claim by virtue of not pursuing compulsory arbitration. Knight v. Idea Buyer, LLC, 723 F. App'x 300, 301 (6th Cir. 2018) (citing Teamsters Local Union 480 v. United Parcel Serv., Inc., 748 F.3d 281, 287 (6th Cir. 2014)). Of course, on a motion to dismiss, the well-pleaded factual allegations in the governing complaint are accepted as true, Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (2009), and in this case are as follows:

Frank Simonetti and Veronica Zelle are the principals and owners of 5th of July, LLC, a Tennessee limited liability company, and Sweety High, Inc., a California corporation. Through those

companies, Simonetti and Zelle have served for the last four years as the exclusive personal managers for TMT, a rising country music star. TMT is a minor and Simonetti and Zelle have worked with both her and her parents, Daniel and Kristina Thomas, for the last eight years. Their efforts have been successful: "they fostered TMT from an unknown child performer in Flint, Michigan, to the stage of the Grand Ole Opry and other national venues[,]" and landed her "a major record contract and publishing deal at the age of thirteen." (Doc. No. 11, Amended Complaint ¶ 1).

Simonetti and Zelle claim that they have advanced over "$3 million in unreimbursed funds from their company, Sweety High" in an effort to make TMT a star. (Id.). They also claim to have treated both TMT and her parents "as family members, devoting thousands of hours to the Thomases' well-being, and setting the Thomas family up for a prosperous future by leveraging Mr. Simonetti's and Ms. Zelle's money and relationships for the Thomases' benefit in the music business." (Id.).

The management services were originally provided by Sweety High through a Personal Management Agreement executed October 15, 2015, and then by 5th of July through a virtually identical agreement executed November 3, 2017. (Doc. Nos. 20-1, 20-2).[1] Those entities are alleged to "have paid for publicists, media training, guitar lessons, vocal lessons, acting lessons, touring expenses, band-related expenses, wardrobe, hair-styling, and make-up for TMT, as well as substantial travel, food, and lodging for TMT and her parents (Defendants Dan and Kristina Thomas)

---

[1] For present purposes, the only real difference between the two agreements is the governing law and location where disputes are to be resolved. The Sweety High Agreement provided that it would be construed in accordance with California law and that any arbitration would occur in Los Angeles. The 5th of July Agreement indicated that it would be governed by Tennessee law, and any arbitration would occur in Nashville. Because the agreements are identical in pertinent respects and for ease of discussion, the Court will hereafter reference simply the 5th of July Personal Management Agreement unless otherwise appropriate.

in numerous locales, including Nashville, Los Angeles, and New York." (Doc. No. 11, Amended Complaint ¶ 17).

Plaintiffs claim that, over time, Zelle and Simonetti "began to observe a sense of entitlement, resentment, and dishonesty on the parts of the Thomases," that TMT's parents would "erupt[] in[to] angry outbursts in response to routine business requests," and that TMT "began to demonstrate a lack of commitment to her craft in terms of the time and effort she devoted to it[.]" (Id. ¶ 20). Accordingly, they texted Defendants expressing their concerns.

In response, Plaintiffs received a three-page letter dated August 9, 2019 from a lawyer stating that "TMT was declaring the Management Agreement null and void 'effective immediately,'" (id. ¶ 22), even though three years remained under the 5th of July Personal Management Agreement. In turn, 5th of July and Sweety High, Inc. filed a two-count Amended Complaint in this Court. Count One is brought under the theory of quantum meruit, and Count Two alleges unjust enrichment. The essence of the Amended Complaint is that Zelle and Simonetti "devoted thousands of hours to furthering the interest of TMT and her parents for which they have not been compensated, in addition to advancing unreimbursed hard expenses totaling over $3 million." (Id. 25).

Defendants seek to compel arbitration based upon the "Controversies" clause contained in both the Sweety High and 5th of July Personal Management Agreements. Each provides:

> Neither Party hereto shall be deemed to be in breach of any of its obligations hereunder unless and until the other Party hereto shall have given such Party specific written notice by certified or registered mail, return receipt requested, of the nature of such breach and such Party shall have failed to cure such breach within fifteen (15) days after its receipt of such written notice or shall have failed to commence to cure such breach within said fifteen (15) days in the event such breach is not capable of being cured within fifteen (15) days after its receipt of such written notice. *Any dispute hereunder shall be submitted to binding arbitration in* [*Nashville, Tennessee or Los Angeles, California*] *in accordance with the rules and regulations of the*

> *American Arbitration Association.* In such event the prevailing Party shall be entitled to reimbursement from the other Party for reasonable attorneys' fees. All remedies, rights, undertakings, obligations and agreements contained in the Agreement shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party.

(Doc. Nos. 20-1 at 9, ¶ 14, 20-2 at 10 ¶ 14) (emphasis added).

## II.

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a court determines that the cause of action is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete. 9 U.S.C. § 3.

There is strong federal policy in favor of arbitration of disputes. O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 356 (6th Cir. 2003); Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 205 F.3d 906, 911 (6th Cir. 2000). "Because of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." Glazer v. Lehman Bros., 394 F.3d 444, 450 (6th Cir. 2005); accord Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc., 350 F.3d 568, 573 (6th Cir. 2003). Therefore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

## III.

Plaintiffs object to arbitration on two grounds. First they argue that their claims for quantum meruit and unjust enrichment fall outside the scope of the arbitration clause. Second, they assert that

4

TMT's parents aren't parties to the Personal Management Agreement and cannot force arbitration. The Court is unpersuaded by either argument.

## A.

"District courts have the authority to decide, as a threshold matter, whether an issue is within the scope of an arbitration agreement." Fazio v. Lehman Bros., 340 F.3d 386, 395 (6th Cir. 2003). That is, "[w]hen asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue." Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000) . This is so because "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*," Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2856 (2010) (emphasis in original).

Here, Plaintiffs claim that the Personal Management Agreement only requires arbitration of disputes arising from performance or non-performance under the Agreement itself, but their claims are "non-contractual, equitable claims" (Doc. No. 28 at 12) in the form of quantum meruit and unjust enrichment. They insist that paragraph 14 applies only to breach of contract, and argue the "dispute hereunder language" underscores that fact.

As primary support for their position, Plaintiffs point to the Ninth Circuit's "especially salient" observation in Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1464 (9th Cir. 1983) that "arising under has been called relatively narrow as arbitration clauses go," and its "finding that 'arising hereunder' is intended to cover a much narrower scope of disputes, *i.e.,* only those relating to the interpretation and performance of the contract itself." They also rely on the unpublished Sixth Circuit decision in Paige v. BAE Sys. Tech. Sols. & Servs., Inc., 566 F. App'x 500, 504 (6th Cir. 2014) and the cases it string-cites for the proposition that a dispute arising "under

5

the terms of this agreement . . . does not include claims 'related' to the agreement or that arise out of the relationship between the parties."

The Court has no quarrel with the holdings in either Mediterranean Enterprises or Paige, and agrees that "arising under" an agreement is generally narrower than "related to" an agreement. These conclusions alone, however, hardly answer the question of whether Plaintiffs' quantum meruit and unjust enrichment claims are arbitrable.

To determine whether a claim falls within the scope of an arbitration agreement, the "focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 55 (3d Cir. 2001); accord Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 94 (4th Cir.1996); Gregory v. Electro–Mech. Corp., 83 F.3d 382, 384 (11th Cir.1996); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987). "Focusing on the facts rather than on a choice of legal labels prevents a creative and artful pleader from drafting around an otherwise-applicable arbitration clause." Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc., 567 F.3d 1191, 1198 (10th Cir. 2009); see also Combined Energies v. CCI, Inc., 514 F.3d 168, 172 (1st Cir.2008) ("[The plaintiff] cannot avoid arbitration by dint of artful pleading alone."). According to the Sixth Circuit, "[a] proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." Fazio v. Lehman Bros., 340 F.3d 386, 395 (6th Cir. 2003).

Even a cursory reading of the Amended Complaint makes clear that the present dispute between the parties cannot be decided without reference to the Personal Management Agreement. Indeed, the Amended Complaint begins by asserting that Plaintiffs are "seeking to be made whole

6

for the goods and services that Plaintiffs have provided to Defendants, the value of which exceeds $3 million," (Doc. No. 11 at 1), yet the entire *raison d'être* for the Personal Management Agreement was to provide goods and services to establish and bolster TMT as a country music star, in exchange for compensation in the form of commissions. (See Doc. No. 20-1, ¶¶ 1, 2, 5). It is little wonder, therefore, that the Personal Management Agreement is referenced on numerous occasions in the Amended Complaint, either explicitly or implicitly.

A closer examination of the Amended Complaint only solidifies the conclusion that arbitration is required and that Plaintiffs' casting their claims as being for quantum meruit and unjust enrichment may be nothing more than very artful pleading. In paragraphs 16 through 18 of the Amended Complaint, Plaintiffs identify what they have allegedly done to promote TMT's musical career. In addition to the major record and publishing deals already mentioned, they "produced all of her work product, including videos, photos, events and the like"; "paid for and produced the content, paid to market, and subsequently grew her social media accounts from nearly zero to over 1.3 million followers"; "provid[ed] almost four years of artistic and strategic direction"; "grew her digital music streams from zero to over 5 million across Spotify, Apple, and Amazon"; "got her appearances on national television, including Good Morning America, the Today Show, PBS, the Disney Music Awards Show, and the Macy's Thanksgiving Day Parade"; "got her on the Grand Ole Opry nineteen times"; "got her substantial media coverage in Billboard, USA Today, People, Us Weekly, the Washington Post, and Rolling Stone"; and "got her on CMT, the Disney Channel, and Radio Disney dozens of times," among other things. (Doc. No. 11, Amended Complaint ¶ 16). Additionally, and as also already noted, Plaintiffs allege that "Sweety High and 5th of July have paid for publicists, media training, guitar lessons, vocal lessons, acting lessons, touring expenses,

7

band-related expenses, wardrobe, hair-styling, and make-up for TMT, as well as substantial travel, food, and lodging for TMT and her parents. . . in numerous locales, including Nashville, Los Angeles, and New York," and that "Ms. Zelle and Mr. Simonetti produced all of TMT's artistic work product, including helping her write her original music and content, spent the money to market all of it, and opened all their relationships to the Thomases to provide TMT with the fans and industry connections for the career she has today." (Id. ¶¶ 17, 18). However, these are the very things that one might expect under agreements that required Plaintiffs to (1) "advise, counsel and direct artist . . . in connection with all matters relating to Artist's professional career in all branches of the entertainment industry"; and (2) "use commercially reasonable best efforts to attend to all matters to which a personal manager of recording artists and entertainer's traditionally attends." (Doc. Nos. 20-1 at 1, ¶ 2).

Furthermore, consideration of the Personal Management Agreement will be necessary to determine whether Plaintiffs quantum meruit and unjust enrichment claims are even viable. This is because under both Tennessee law (for purposes of the 5th of July agreement) and California law (for purposes of the Sweety High agreement) unjust enrichment and quantum meruit are equitable substitutes employed only where a contract does not exist. See Arena v. Schulman, LeRoy & Bennett, 233 S.W.3d 809, 815 (Tenn. Ct. App. 2006) ("It is a general rule of law that quantum meruit relief, based upon an implied contract or quasi-contract, will not be imposed in circumstances where an express contract or agreement exists."); Metro. Gov't of Nashville & Davidson Cty. v. Cigna Healthcare of Tennessee, Inc., 195 S.W.3d 28, 32 (Tenn. Ct. App. 2005) (noting that unjust enrichment and quantum meruit are "essentially the same," and that courts may impose contractual obligations under such quasi-contract theories only in the absence of an enforceable contract); Lair

8

v. Vinci, No. D043433, 2005 WL 3276355, at *10 (Cal. Ct. App. Dec. 5, 2005) (stating that "where there is an express contract between the parties governing the compensation in question, quantum meruit will not lie because the law will not imply a promise to pay the reasonable value of the services at variance with the parties' agreement"; SLM Mktg., 2003 WL 257323, at *7. (Cal. Ct. App. Feb. 7, 2003) (noting that "express agreement as to compensation precludes recovery of compensation on an unjust enrichment theory").

**B.**

Next, Plaintiffs advance a one-paragraph argument in which they assert that because the 5th of July Personal Management Agreement "expressly states that it is between 5th of July LLC and TMT," her parents – Defendants Dan and Kristina Thomas– cannot enforce arbitration. (Doc. No. 28 at 11). Plaintiffs note that while TMT's signed the agreement, her parents only did so beneath a clause that simply stated "upon court approval of this Agreement, the undersigned will have no further obligations pursuant to the terms of the Agreement." (Id.). This argument fails, even ignoring that TMT is a named Defendant, and her parents presumably offered her counsel, advice, and permission regarding matters falling within the terms of the Personal Management Agreement.

"[A] litigant who was not a party to the relevant arbitration agreement may invoke [the Federal Arbitration Act] if the relevant state contract law allows him to enforce the agreement." Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 632 (2009). Under Tennessee law, it has been held that, even where the arbitration agreements does not expressly state that non-signatories may compel arbitration, a non party can compel arbitration if "the arbitration agreement does not limit arbitrations only to parties to the agreement." Mid-S. Maint. Inc. v. Paychex Inc., No. W201402329COAR3CV, 2015 WL 4880855, at *21 (Tenn. Ct. App. Aug. 14, 2015); see also Clinical Sols., LLC v. Physicians

9

Plan Rx, LLC, No. 3:16-CV-00196, 2016 WL 6249222, at *2 (M.D. Tenn. Oct. 26, 2016) (requiring arbitration for breach of contract and unjust enrichment claims under Tennessee law based upon request by non-signatory to agreement between the parties). Similarly, under California law, "[t]hird parties may enforce a contract with an arbitration provision . . . where they are intended third party beneficiaries or are assigned rights under the contract." Cohen v. TNP 2008 Participating Notes Program, LLC, 31 Cal. App. 5th 840, 856, 243 Cal. Rptr. 3d 340, 355 (2019). Such holdings make abundant logic, otherwise, a party could "avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint," thereby effectively nullifying that claims subject to arbitration be arbitrated. Arnold v. Arnold Corp.-Printed Commc'ns For Bus., 920 F.2d 1269, 1281 (6th Cir. 1990).

### IV.

Finally, Plaintiffs request that if arbitration is ordered, the Court stay the present case, or at most, dismiss the case without prejudice. Although the Second Circuit has recently noted that "the Courts of Appeals are about evenly divided" on the issue and found a stay to be required under 9 U.S.C. § 3, Katz v. Cellco P'ship, 794 F.3d 341, 345 (2d Cir. 2015), the Sixth Circuit has "already rejected that argument." Ozormoor v. T-Mobile USA, Inc., 354 F. App'x 972, 975 (6th Cir. 2009) (citing Arnold, 920 F.2d at 1275). In fact, "[m]ost district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice." Jones v. U-Haul Co. of Massachusetts & Ohio Inc., 16 F. Supp. 3d 922, 944 (S.D. Ohio 2014) (citing cases). Nevertheless, "[w]hether to stay or dismiss a case in which all claims have been referred to arbitration is a matter of discretion." Kelch v. Pyramid Hotel Grp., No. 1:18-CV-707, 2020 WL 489237, at *3 (S.D. Ohio Jan. 30, 2020); see also, Hilton v. Midland Funding, LLC, 687 F. App'x

10

515, 519 (6th Cir. 2017) (observing that a stay in lieu of dismissal is appropriate where party requests it). Because the Federal Arbitration Act provides that a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, and rather than requiring Plaintiffs to refile the action should viable claims remain post-arbitration when they have explicitly requested a stay, the Court will exercise its discretion to stay this case pending arbitration. See, Myers v. TRG Customer Sols., Inc., No. 1:17-CV-00052, 2018 WL 705629, at *3 (M.D. Tenn. Feb. 5, 2018) (exercising discretion to say proceedings).

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE